**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**RONALD RIFENBURGH o/b/o R.R.R.,**

                      1:14-cv-01210

          **Plaintiff,**

  v.

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

          **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

Plaintiff Ronald Rifenburgh o/b/o R.R.R. brought this suit under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his application for benefits is not supported by substantial evidence. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.    PROCEDURAL HISTORY**

R.R.R.'s father filed an application for child supplemental security income on February 25, 2009. The claim was denied on May 28, 2009. Plaintiff filed a timely request for a hearing. Administrative Law Judge (ALJ) Dale Black-Pennington presided over a hearing in Albany, York on July 21, 2010. The ALJ issued an unfavorable decision on July 29, 2010, and made the following findings:

    1. The claimant was born on June 15, 2003. Therefore, he was a preschooler on February 25, 2009, the date application was filed, and is currently a school-age child (20 CFR 416.926(g)(2)).

1

2. The claimant has not engaged in substantial gainful activity since February 25, 2009, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: seizure disorder, migraine headaches, ADHD (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926(a)).

6. The claimant has not been disabled, as defined in the Social Security Act, since February 25, 2009, the date the application was filed (20 CFR 416.924(a)).

Plaintiff requested a review of the July 29, 2010 unfavorable decision. The Appeals Council remanded the matter, instructing the ALJ to:

• Update the medical record to the extent possible with respect to the claimant's seizure disorder and remaining impairments consistent with the requirements of 20 CFR 416.912-913. This should include re-contacting the claimant's treating sources for existing medical evidence and opinions as to his functional ability. Contact the claimant's school and obtain additional evidence from the claimant's teachers, counselors and other school officials regarding his academic progress as needed. The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing treating source evidence.

• Obtain evidence if necessary from a medical expert to clarify the nature and severity of the claimant's impairments (20 CFR 416.927(f) and Social Security Ruling 96-6p).

and,

• Evaluate whether the claimant's impairments meet or medically equal or functionally equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. In doing so, consider the "whole child" approach to assessing the claimant's limitations in accordance with Social Security Rulings 09-1p-09-8p.

Tr. 22.

On October 17, 2012, ALJ Black-Pennington presided over the remand hearing in Albany, York. The claimant was represented by a non-attorney representative. On December 31, 2012, ALJ Black-Pennington

issued an unfavorable decision, making the following findings:

> 1. The claimant was born on June 15, 2003. Therefore, he was a preschooler on February 25, 2009, the date application was filed, and is currently a school-age child (20 CFR 416.926(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since February 25, 2009, the application date (20 CFR 416.924(b) and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: seizure disorder, migraine headaches, attention deficit hyperactivity disorder, and borderline intellectual functioning (20 CFR 416.924(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926(a)).
>
> 6. The claimant has not been disabled, as defined in the Social Security Act, since February 25, 2009, the date the application was filed (20 CFR 416.924(a)).

Plaintiff requested review of the December 31, 2012 unfavorable decision, which was denied by the Appeals Council. This action followed.

## II. FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff in his memorandum of law. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July

3

16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled.  The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted).  In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)).  Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).  Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**IV.     DISCUSSION**

Plaintiff argues that the ALJ's December 31, 2012  decision is not supported by the substantial evidence in the record.  In this regard, Plaintiff points out that the ALJ obtained the testimony of medical

expert, Gerald F. Winkler, M.D.,[1] to clarify the nature and severity of R.R.R.'s impairments. Plaintiff argues, however, "that instead of relying upon Dr. Winkler's expert testimony, the Administrative Law Judge substituted it with her own opinion." Pl. Brief., pp. 3-4.

Plaintiff's argument centers on whether Dr. Winkler's opinion, when combined with R.R.R.'s father's testimony regarding the impact R.R.R.'s migraine headaches had on his day-to-day functioning and the other evidence in the record, presented sufficient support for the conclusion that R.R.R.'s condition functionally equals a Listing impairment. Plaintiff argues that it did, see Pl. Brief, pp. 6 ("The record is . . . replete with evidence, in addition to the testimony of the claimant's father, documenting frequent and severe migraine headaches supporting the opinion of medical expert, Dr. Winkler.") and 8 ("This evidence supports the claimant's father's testimony that the claimant has frequent and severe headaches causing him to miss a lot of school."); the ALJ found it did not, Tr. 27 ("I decline to find the severity of claimant's migraine headaches medically equals either listing 111.02 or 111.03."), which, the Commissioner argues, was supported by the evidence. For the reasons that follow, the Court agrees with the Commissioner.

Dr. Winkler provided the following relevant testimony:

**Dr. Winkler** – We do have the complaint of frequent migraine headaches which certainly do occur in children and certainly can be of significance and interfere with their ability to do what they have to do and it would appear to me that the combination of the IQ of 76 which would be borderline and of the frequent migraine headaches could be construed as causing a degree of interference with normal function that would be as disabling as if the claimant indeed had an IQ of less than 70 with an association with a significant mental disorder so I think that we don't have a meeting but we may very well have an equaling and I could find myself in agreement with a concept of an equaling based upon the migraine and the borderline IQ.

**ALJ** – What listing is it that you believe this equals?

**Dr. Winkler** – Well, there is no listing for migraine and in dealing with that problem in other

---

[1] Dr. Winkler is board certified in neurology.

instances, the judges have been willing to and have even suggested a comparison with seizures and seizure frequency, this I agree was in the adult category, but say if the child is having migraine headaches at the same frequency as someone who is having seizures, if they are having seizures at the same frequency as the reported migraines they would be equaling the impairment that would have resulted from the seizure disorder and I think that that would be a formulation that I would support and so if he is having daily migraine headaches it interferes with his ability to pay attention to his studies, that that would be as much as an interference with his daily activity as if he had been having seizures at that frequency.

**ALJ** – I am not following your reasoning … (a lengthy discussion regarding limitations and medically determinable impairments ensued).

**ALJ** - Then doctor, based on your experience, education and training, and your review of the medical evidence, do you have an opinion as to whether or not that impairment, seizure disorder unspecified meets or equals any of the listings.

**Dr. Winkler** – I cannot establish an equaling of the listing based on the information available.

**ALJ** - And with respect to your discussion of the frequent migraine headaches coupled with the low IQ, in your estimation does that meet or equal a listing or what is your determination with respect to those facts?

**Dr. Winkler** – It does not meet a listing. My discussion was based on the theory that if you compare the frequency of the headaches with the listing of seizures and their frequency requirements that the equality might be established by looking at the frequency of the headaches and if they occurred at a frequency that would be the seizure listing that that would constitute an equaling provided that the headaches were of sufficient severity and duration to constitute a significant impact of the function of the patient and in this case if the headaches on occasion lasted all day and if they were of sufficient intensity to cause the patient to have to cease all activities then that would be an equaling. We haven't really heard or at least I haven't heard exactly how severe the impact is of the headache on the ongoing function of the claimant.

**Claimant's representative** – Doctor Winkler … if I understood your testimony earlier, I believe you said that you felt that the claimant's condition equaled a listing when you compared his migraine episodes to the seizure episodes. Is that correct?

**Dr. Winkler** – An equaling of the listing, yes, with the provision that I have added now that they have a similar degree of impact on his daily function as a seizure frequency would.

**Claimant's representative** – And based on the father's testimony that the claimant has migraine headaches up to four times per week for a few hours at a time up to a day at a time,

6

would you, in your opinion, would that be the necessary severity to equal that listing?

**Dr. Winkler** – I would also have to know about the intensity of the headaches and their impact on his ability to function.

**Claimant's representative** – Based on his testimony, he has said that the child would go to bed.

**Dr. Winkler** – All right, if he has to go to bed with the headaches, certainly it is a sign of impaired function and under those circumstances. I feel it would be an equaling of the seizure listing.

**Claimant's representative** – And are we referring to 11.03 or 11.02 or 111.02 or 111.03?

**Dr. Winkler** – Yes, that's right.

**Claimant's representative** – Which one would it be doctor?

**Dr. Winkler** – Oh, 111.03. It could be either of those 111.02 … actually, 111.02 would fit better because of the duration of the headache.

**ALJ** – Doctor, thank you very much for your time and your testimony. Um, I'll let you go at this time and that will be the end of the hearing for you. We will continue with the hearing. Take care doctor.

**Claimant's representative** – I would just like to state that based on the doctor's testimony along with the father's testimony of the frequency of the migraine headaches several times a week to the point where the child needs to remain in bed and misses school and effects his daily functions and that the record supports that the claimant equals listing 111.03.

**ALJ** – Um, just so you are aware I am not persuaded that there is a significant, there certainly is an impact and there certainly is a severe condition here. However, I am not persuaded by the factual evidence that there is such a significant impact on balancing the entire record including school reports and the testimony taken here so I am going to take a look further at the psychiatric CE and maybe get a better picture of the entire picture of the child.

Recording @ 9:23:50 - 9:39:34.

After the hearing, the ALJ examined the evidence and determined that "the severity of claimant's impairments does not meet or medically equal the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25. In reaching this conclusion, the ALJ noted that "[t]he listings relevant to

claimant's impairments are 111.02 major motor seizure disorder, 111.03 nonconvulsive epilepsy,112.05 mental retardation, and 112.11 attention deficit hyperactivity disorder." Tr. 25. The ALJ noted that "Dr. Winkler raised the possibility that the severity of claimant's migraine headaches might medically equal listings 111.02 or 111.03," Tr. 27, and explained:

> While no listing for migraine headaches exists, under 20 CFR 416.926, findings concerning impairments without listings are to be compared to the findings required for closely analogous listed impairments. For the severity of claimant's migraine headaches to meet listings 111.02 and 111.03, Dr. Winkler specified that headaches would have to last and be of sufficient intensity to cause the claimant to cease all activity. Dr. Winkler specifically noted in his testimony that he had not heard evidence that would show how severe the impact of the headaches were on claimant's daily functioning. However, he conceded that the severity of claimant's migraine headaches would medically equal listings 111.02 and 111.03 if his headaches caused him to go to bed frequently when questioned by claimant's representative, as the testimony of claimant's father indicated.

Id.; see also id.[2]

The ALJ proceeded to determine whether R.R.R. had an impairment or combination of impairments that functionally equals the severity of a Listing, and, in doing so, employed a two-step process to determine whether a medically acceptable physical or mental impairment could reasonably be expected to produce R.R.R.'s symptoms. Tr. 28-29.[3] This consisted of a review of R.R.R.'s medical records for the treatment he

---

[2]The ALJ correctly indicated that "Dr. Winkler did not actually state that it was his opinion that the severity of the claimant's migraines medically equaled listing 111.02 and 111.03. Dr. Winkler merely stated that an equaling of those listings was possible and indicated that the severity of the claimant's migraine headaches would medically equal those listings if the allegations of claimant's father are accepted as a complete accurate account of claimant's functioning." Tr. 27.

[3]The ALJ wrote:

Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the undersigned has considered all of the relevant evidence in the case record. "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

As provided in 20 CFR 4 l 6.926a(b) and ( c) and explained in SSR 09-1 p, the undersigned has evaluated the

(continued...)

8

received from 2008 to 2012 based on his parents' reports that he was having repeated seizures and associated headaches. Tr. 30- 34. The ALJ also considered R.R.R.'s parents' claims of limitation caused by his seizures and headaches. In this regard, the ALJ noted:

> Claimant's parents alleged that claimant is disabled because his impairments cause significant limitations in the six functional domains. Primarily, claimant's parents allege that claimant's seizure disorder and migraine headaches significantly interfere with his ability to function on a frequent basis, producing marked limitation in the domain of physical health and well-being. According to claimant's parents, these impairments have caused claimant to be absent from school for numerous days in the last several years. . . . Claimant's father indicated that migraine headaches were the cause of claimant's absences in the present and previous school years.

Tr. 29.

As the ALJ pointed out, Dr. Castaneda, claimant's treating neurologist, "stated on numerous occasions that claimant's last unequivocal seizure occurred in October 2009," and concluded that the "spells that claimant was experiencing [after that time] were just migraine headaches, and not seizures." Tr. 34. The

---

³(...continued)
"whole child" in making findings regarding functional equivalence. The undersigned has first evaluated how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments. The undersigned has also assessed the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not "severe" in all of the affected domains. In evaluating the claimant's limitations, the undersigned has considered the type, extent, and frequency of help the claimant needs to function. In determining the degree of limitation in each of the six functional equivalence domains, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929, SSRs 96-4p and 96-7p. The undersigned has considered the opinion evidence in accordance with 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96- 6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

9

ALJ also pointed out that "there are conflicting reports in the record concerning the date of claimant's last seizure. This is likely due to the tendency of claimant's mother to characterize nearly all abnormalities as seizures, as illustrated in the medical history above." Id. The ALJ found that R.R.R.'s mother was not a reliable source of information because she described R.R.R. as having had seizures where he was "flopping like a fish," but there was no diagnostic testing to support her claims. Tr. 30, 33, 34; see Tr. 652. The ALJ also noted that this led several medical providers to question the diagnosis of a seizure disorder. Tr. 30. Further, numerous EEGs and ambulatory EEGs, an MRI, a CT scan, sleep studies and multi-day epilepsy monitoring all failed to detect any seizure activity. Tr. 485, 492, 493-95, 490, 536-37, 553-54, 558, 574, 606-07, 645-46, 656, 664. Additionally, R.R.R.'s neurological and physical examinations were always unremarkable. Tr. 485-86, 499-500, 501, 503-04, 546, 548-49, 572, 575, 643-44, 652-53, 654-55, 657-58, 660-61, 665. Thus, there is sufficient support for the ALJs conclusion that R.R.R's reported seizures are not responsible for his alleged inability to function and attend school on a regular basis.

The ALJ also embarked on an evaluation to determine whether there existed sufficient support in the record to credit R.R.R.'s father's testimony regarding the severity and ongoing impact of R.R.R.'s migraines. See Tr. 27- 36; see also Cichocki v. Astrue, 534 Fed. Appx. 71, 75 (2d Cir 2013).[4] The ALJ determined that

---

[4]"It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." Cichocki v. Astrue, 534 Fed. Appx. 71, 75 (2d Cir 2013) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). The Social Security regulations charge the ALJ with determining whether a claimant's symptoms are the result of "a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms." Id. If so, the ALJ must then examine the evidence to determine "how the symptoms affect the claimant." Id. (citing 20 C.F.R. § 416.929(c)(1)). In assessing the credibility of a claimant's subjective complaints "about the intensity and persistence of pain and other symptoms," the ALJ may not reject those claims simply "'because the available medical evidence does not substantiate" them. Id. at 76 (quoting 20 C.F.R. § 416.929(c)(2). Instead, the ALJ is to make a credibility determination based on several factors. Id. (See 20 C.F.R. § 416.929(c)(3)). "The ALJ's decision 'must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be
(continued...)

there was not sufficient support to fully credit this testimony, and ultimately declined to find that "the severity of claimant's migraine headaches medically equals either listing 111.02 or 111.03." Tr. 27.

In reaching this conclusion, the ALJ noted R.R.R.'s school absences and his parents' allegations that migraine headaches and seizures significantly interfered with R.R.R.'s ability to function on a frequent basis by causing him to miss school. Tr. 29; see Tr. 103. However, the ALJ also noted that Plaintiff failed to provide evidence of the reason for R.R.R.'s numerous school absences, see 20 C.F.R. § 416.924; see also Brown o/b/o C.M.B. v. Colvin, 2014 WL 7272964 (W.D.N.Y. 2014)(slip cory)(citing Jonson v. Colvin, 2013 WL 1314781, at *2 (W.D. Pa. Mar. 28, 2013)("[T]he burden of proof rests on the claimant at each of the three steps [of the sequential process for evaluating a child's case].")(internal alterations and citation omitted), finding instead:

> [T]he [parents'] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings . . . . The medical evidence does not support the severity of symptoms and limitations that claimant's parents alleged. . . . [T]he medical evidence shows that diagnostic testing failed to capture any evidence of seizure activity, leading several medical providers to question the diagnosis of seizure disorder. The medical evidence also shows that medications significantly reduced the frequency of claimant's seizures and headaches.

Tr. 30.

The evidence relied on by the ALJ indicates, *inter alia*, that in January 2009, a nurse from R.R.R.'s pediatrician's office examined him and noted the mother's report that R.R.R. did not want to go out or to school and had a "school phobia." Tr. 619. The nurse quoted R.R.R. as saying he hated school "because I'm not home." Tr. 619. Significantly, the nurse noted that when R.R.R.'s mother picked him up from school in the

---

[4](...continued)
sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'" Id. (qutoing SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *2).

afternoon, R.R.R. cried because his mother had been away from him for too long – not because he had migraine headaches or seizures. Tr. 619. Further, in March 2009, Dr. Alegre, R.R.R.'s pediatrician, also noted R.R.R.'s school phobia. Tr. 521-22, 525.

Also, as noted by the ALJ, in April 2009 R.R.R.'s school nurse indicated that R.R.R. was frequently absent, but that the reason for these absences was unknown. Tr. 35; see Tr. 311. The nurse further stated that R.R.R. had not had any seizures in school on days when he was present. Tr. 35; see Tr. 311. Additionally, on September 5, 2012, R.R.R.'s teacher during 2010-2011 indicated that R.R.R. had an unusual degree of absenteeism, but did not provide a basis for the absences. Tr. 429. The teacher also indicated that R.R.R. had headaches, but only a few times during the year. Tr. 435. Accordingly, the ALJ concluded that R.R.R.'s father's allegation that R.R.R. missed school due to seizures and/or migraine headaches was not supported by the record.

In failing to credit to R.R.R.'s father's testimony about the impact of R.R.R.'s migraines on his ability to function, the ALJ also pointed to R.R.R.'s father's testimony that R.R.R.'s behavior had gotten worse since the first hearing in July 2010 and that he had mood swings. Tr. 35; see Tr. 103-05. The ALJ noted that, at the consultative examination with Dr. Rigberg one month after R.R.R.'s father testified, he reported that R.R.R. generally presented no behavioral problems at home. Tr. 35; see Tr. 704. In fact, R.R.R.'s father did not mention R.R.R.'s allegedly disabling migraine headaches during Dr. Rigberg's evaluation when describing R.R.R.'s alleged impairments and functional limitations. See Tr. 704-07. Rather, R.R.R.'s father only described R.R.R. as having trouble sitting still and paying attention and that he received counseling in school related to his parents' divorce. Tr. 704-05. R.R.R.'s father also described R.R.R. as a child who had friends and enjoyed fishing, camping, watching television, listening to music, playing with his siblings and drawing. Tr. 706. While R.R.R.'s father mentioned R.R.R.'s seizure disorder, he also stated that the seizures were not

12

completely controlled. Tr. 705. This contradicts the observation of Dr. Castaneda that R.R.R. had been seizure-free since October 2009, three years prior to Dr. Rigberg's evaluation. Tr. 654, 697.

While the ALJ misstated that Dr. Castaneda indicated on August 1, 2012 that R.R.R. had not had any headaches or seizures despite a decrease in his Depakote dosage in August 2011,[5] the ALJ's misstatement is harmless error because Dr. Castaneda's August 1, 2012 statement was not a determinative factor in the ALJ's step two finding or credibility analysis.[6] Further, and as explained above, there exists substantial evidence to support the ALJ's decision to find R.R.R.'s parents' statements not fully credible, and, therefore, a substantial basis to reject Dr. Winkler's opinion that the effects of R.R.R.'s migraine headaches might have caused his condition to have functionally equaled a Listing level impairment.

Moreover, the ALJ conducted a thorough analysis of the medical record in reaching the conclusion that "the opinion evidence as a whole does not support a finding that claimant's impairment caused a marked degree of impairment in any of the six functional areas." Tr. 36, see also Tr. 36-44. The Court finds no reason to to fault this analysis, or to find that there was insufficient evidence to support the ALJ's ultimate conclusion that R.R.R. was not disabled within the meaning of the Social Security Act.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **DENIED.** The Commissioner's motion for judgment on the pleadings is **GRANTED**. The decision of the Commissioner is **AFFIRMED.**

---

[5] On August 1, 2012, Dr. Castaneda actually stated that R.R.R. had not had any headaches. Tr. 696. In the same treatment note, the doctor separately stated that R.R.R. had not had any seizures despite a decrease in his Depakote dosage. Tr. 696.

[6] Contrary to Plaintiff's argument, the ALJ did not rely solely on Dr. Castaneda's August 1, 2012 treatment note to determine that R.R.R.'s migraine headaches did not equal Listings §§ 111.02 or 111.03. See Pl.'s Brief at 6-8. Rather, the ALJ relied on Dr. Winkler's testimony that R.R.R.'s migraine headaches equaled Listing §§ 111.02 or 111.03 *if* R.R.R.'s father's testimony was found credible. Tr. 27; see Tr. 124-25.

**IT IS SO ORDERED.**

Dated: March 18, 2016

Thomas J. McAvoy
Senior, U.S. District Judge